Thank you counsel, thank you your honors. Keep your voice up a little bit, can you see Judge Schroeder okay too? I can. Okay, thank you. Okay, thank you. Yes, we appreciate being able to be here today. I'm hoping, you know, just to clarify. Tell us your name. Austin Huff, your honor, on behalf of Northland and Caleb Riggs today. Okay, thank you. And today I was planning to, you know, mention Northland as a blanket term for both Northland and Caleb Riggs as I speak here. Do you want to save any time for rebuttal? I would. I'll try to save a few minutes, just two to three minutes for rebuttal. Okay, thank you. Thank you. So I hope that we can just clarify any questions. You know what, our belief on this issue is that there's really pretty limited factual dispute. It's really, you know, just the legal questions of coverage that we're trying to determine here. But, you know, any clarifications that we can offer, I'm happy to make it. Well, my understanding of the duty to defend, you look at the four corners of the complaint. And what allegations in the Ball and the Balboa complaints give rise to the potential for coverage under the policy? Yes, thank you. Yeah, absolutely. And we think it's right on the line of being explicitly mentioning property damage. And that's really what we have to step back and look at is, you know, that's what's promised up front in this insurance policy is coverage for property damage. If you're facing legal liability due to property damage, CVIC will cover you. Your client's contention, as I understand it, is that a fire prevented them from doing or made them do the things that are alleged in both the Ball and Balboa claims. But didn't the underlying facts that relate to both suits occur before the fire? No, our position is that's not the case at all. Well, just factually, you may want to argue about the results of that, but it is correct, isn't it, that the facts behind these two complaints, the allegations, occurred prior to the fire? I think there are certain... How can you not say, I understand that, here's why that's not important? Are you disputing what I just said? There are certain allegations that occurred before the fire. They contracted for the cabinets before the fire. They asked for their deposit back before the fire, right? And then in contracting on the pieces of equipment, that was all before the fire. But the legal liability is what we're arguing. That's where the timeline should begin. The legal liability came after the fire. There were facts leading up. There was a relationship between the parties in both the lawsuits. Well, but even if you look with the cabinets, they gave 75%, and before the fire happened, they asked for it back. And your client agreed to give it back, but just didn't, right? And I think, but she was not under legal duty to make that refund within a day or two days or even two weeks. There was no contractual term that said, you know, if we want to back out of this agreement, maybe take the balls instance, there was no agreement in that contract. Is there anywhere in the four corners of either of those complaints that talks about a fire? There's not. And that is, that's really, you know, what makes it difficult for us. But we strenuously believe that you can't give the third-party plaintiffs complete control over whether coverage is determined. And that's what, you know, if we rely on just the lack of the. If you have to look at the complaint to say if there's coverage, and it doesn't say anything about a fire in there, it talks about basically the not returning the deposit and not making the installment payments, and the contract specifically, your only chance under this, it has to be property damage or an occurrence, which would have to be the fire, but that's not even in the complaint. So if they look at the complaint, why would they have a duty to defend when there's no property or occurrence that's alleged in the complaint? And I think the Idaho law on this regard is meant to give insurers some protection. You know, they don't want them to go on a wild goose chase. I think that's the intent behind that. You know, they can just look at the complaint. But we think it's a huge stretch to give them then this blanket, you know, get out of jail free card, when they know the facts, and the facts have been put before them. We're not asking for a wild goose chase here. We're asking to just, you know, use the facts. And, you know, as we put in the briefs, you know, the timeline lines up perfectly with what CBIC knew going into this. They knew of the fire. They saw, you know, this timeline in the complaints where she starts missing payments. Now, my understanding, the insurance company has paid for some of the fire damage, correct? Yes, that's correct. Including subrogation claims, correct? Yes, that's correct, yes. And it wasn't enough to fully alleviate the debts that were owed on the two underlying issues is the problem. Did your client accept the payment? She did. With any kind of reservation? I don't believe so, no. But it wasn't enough to fully resolve the debts in these complaints. And, you know, of course our argument is these debts are due to property damage. That's a legal liability she's facing now that she needs coverage for due to the property damage that occurred. There was a letter asking for coverage, right, a demand letter? Yes. Written by counsel? Yes. You? No, it was my predecessor. Okay. Is it anywhere in that demand letter does it say the fire prevented us from being able to do the things alleged in the complaint? I'm afraid I don't remember that off the top of my head. The answer is no, isn't it? It might be. I don't know. I can't promise that. But we do think they have the knowledge, and that's what I think was frustrating when my client received, you know, their explanation of denying coverage. You know, the district court mentioned they gave you 11 pages of explanation. It wasn't an offhand denial. But it was really just 11 pages of, you know, copy and pasting from the insurance policy itself. There was no evaluation of what CVIC knew of the facts. I think what we're arguing is the facts were right before them. Well, they have kind of a double barrel against you. First, they say the language, it has to be a property, it's got to be a property loss or an occurrence. So they say that's not the case with the fire because you can't really tie that to it. But then the next thing is there's also exclusions that were contractual liability as an exclusion. So you've got that's their double barrel argument against you. First, that it's not covered by the contract. But then second, even assuming that it is, the exclusion talks directly to contractual liability. But this certainly has the smell of. Yes. I apologize. Yes. And, you know, we understand that's kind of the threshold issue we need to overcome is whether coverage applies. But, you know, what we want to request is that the main analysis here is whether there was property damage, not whether it occurred in contract, not whether there was a contract between the parties, just whether there was property damage. And that's really what should be the threshold issue that creates the presumption that my clients are covered under this policy. And then, yes, the contractual exclusion needs to be considered. But we think just based on the plain reading of that, and really Howard v. Oregon Mutual Insurance Company or the Idaho court said, you know, really what we need to do is to apply the layman term or common terms used in layman, applied by layman in daily usage in order to effectuate the intent of the parties. And that's what we'd like to ask is what was the intent of the parties. And would a small business or an individual or any business enter into this insurance policy, assuming that they'll never be covered in any contractual type of issue? Well, that's what they're going to argue. That's what they say that the plain language says, and that's what they say the exclusion says. That would be their argument. Now, you raise the possibility of certification, which I am more than happy to certify when I think that there's an issue that we need an answer on. But it looks like the Idaho Supreme Court has analyzed contractual liability exclusions in at least two cases, employers' mutual casualty versus Donnelly and Magic Valley Potato Shippers versus Continental Insurance. Neither of those cases support your position that contractual liability exclusions only apply to indemnification or hold harmless provisions. So what's your best argument for certification? And what specific question would you have us certify? Sure. And we think reading those two cases, we think it's extremely clear that they just, this argument that we're advancing was not raised before the court on those issues. They did not do an in-depth, they didn't do any analysis of whether contractual liability exclusion refers to hold harmless or indemnity agreements. It was almost just assumed, and it appears from the reasoning the court used that both of the parties in those cases kind of assumed the same thing. So I don't think the court has had the opportunity to address this issue. So what we would like is to certify the question of, does the contractual liability exclusion solely refer to hold harmless or indemnity clauses? And we think just the vast amount of case law that supports our contention is a huge strength in our argument there. I think the amount of case law that has delved into this, and then you compare it to Idaho's two cases where they didn't give it any real thought, I think it shows. Well, if we don't even get to the exclusion, if we just say the contract, you're not, you don't make it on the contract, is there any, then is there anything to certify if we don't get to the exclusion? I don't think so. With that threshold issue, we understand that we do need to show that the liability stems from property damage. That is the threshold issue. So we understand that we do need to meet that threshold before anything else even matters. Judge Schroeder, did you have any questions? Yes. I wanted to understand your argument on the threshold issue of liability based on property damage. How do you get this into that coverage? Yes, we think, when you look at the complaints, both of the complaints mention the property. So we have property at issue that's explicitly mentioned in the complaints. It's really just the damage that they don't come out and specify. But, you know, the damage to that property is known by all the parties involved. Our argument is really that we can't let the third parties here that are suing my client have that much control over whether the insurance applies. If that answers your question. Is this liability for property damage or are we talking about liability for debt? I apologize, could you repeat that? Is the underlying liability here liability for debt? It is. I guess, yes, it is. It's for a debt. I mean, but, yeah, I think, and, you know, that's where kind of the causation and how much causation do you expect and what level or how far the chain of causation are you willing to go. But I think, you know, at most it's one link away from being the direct result of property damage. And maybe there's a contract in between the property damage and the lawsuit. But we don't believe that's something that should act as a get-out-of-jail-free card for an insurance company. Would you like to save the balance of your time for rebuttal? I would. I would. I appreciate it. Unless either of my colleagues want to have questions right now. Okay. We don't appear to have, so we'll save the balance for rebuttal. Thank you. All right. We'll hear from Contractors Bonding. Good morning. And may it please the Court. Molly Mitchell with Duke Evitt on behalf of Contractors Bonding. I'd like to start out by addressing some of the questions that the Court posed to Appellant's Counsel. In terms of the Four Corners question, there are no allegations in either complaint of property damage. It appears that Northland is essentially arguing that property damage doesn't need to be explicitly alleged if facts could essentially be interposed on the complaint that would have something to do with property damage. That is counter to the plain language of the policy. I want to direct the Court to two terms that I think are very relevant to the analysis. The Commercial General Liability Coverage says that Contractors Bonding, quote, will pay those sums that the insured becomes legally obligated to pay as damages because of bodily injury or property damage to which this insurance applies. I think the definition of suit is also very relevant. A suit is a civil proceeding in which damages because of bodily injury or property damage are alleged. Let me ask you a hypothetical question, Counselor. Let's suppose that a company is in the business that Northland was and that they get into a dispute with a customer. This is all hypothetical. The core of the dispute is the customer wants their deposit back or the materials that were related to the project. In between doing that, a fire completely destroys Northland's business. Would there be coverage? No, not in that scenario, Your Honor. Because the underlying action, the liability that the insured Northland would be, or the hypothetical company would be being sued on, would be contractual in nature, and it wouldn't be for property damage. And one point I wanted to make clear is where… Fire that completely destroyed the business. Again, this hypothetical, I'm not saying this is this case, but a fire that completely destroyed Northland's business would not provide coverage. Not for the third-party suit because that would be seeking damages for contractual liability, and that's one point that I wanted to… But it's a little bit closer than the facts of this case. Wouldn't you say the hypothetical pushes the ball a little bit closer? I would agree. That does push the ball a little closer. Because also if they were asking for their materials back, I think in Judge Hawkins' hypothetical, they're asking for their materials, and then the fire destroys everything. So then the materials, I think they would have a stronger argument. I would agree that they would have a… We're part of the fire. That's correct. I would agree that they would have a stronger argument for coverage initially being triggered under the policy that said there is an exemption for property in the possession of the insured. So I think that a different exemption would probably… So you're saying on the duty to defend, it might be stronger. Yes. But then on the coverage issue, it might take you to an exclusion, or it would still…the coverage would be denied just in the general policy. I think the coverage would be denied just based on that exemption. And that brings me to a point that the court touched on earlier, is that Northland was compensated for the damage to its personal property under first-party insurance coverage. And that's what first-party coverage is for, is for covering the damage to the insured's actual property, whereas commercial general liability coverage is intended to insure the insured against suits arising out of essentially third-party liability. So damage or bodily injury that the insured causes because of an accident. And that's just not what the damages sought in these two lawsuits are. Your client paid for the fire damage, correct? That's correct. And some subrogation claims. That's correct. Do we know the nature of those claims? We do not have any information about the nature of the subrogation claims in the record. The $37,000-ish that was paid directly to Northland, that was specifically for the damage to the property that was secured by the Balboa financing agreement. That was for the cabinets? The record does not tell us the nature of those subrogation claims. That's correct, Your Honor. Okay. Wait, Balboa was the equipment? Yes, that was the equipment financing agreement. So did they have any, like, cabinets that were burned in the fire? Did you pay for any cabinets that were burned on the property or materials for cabinets? Your Honor, we don't have any of that evidence in the record. I just can't answer what exactly the subrogation claims covered. I apologize. One point I wanted to raise, opposing counsel raised this concern about essentially the insured kind of being at the mercy of the third party in terms of what they allege in their complaint, you know, will trigger or not trigger coverage under the policy. I'm sort of a two-edged sword. I did some of this kind of work when I was in private practice. And after some experiences like this, before I would file suit, I would go to the potential defendant and say, can I see your insurance policy? And let's see if I can plead a complaint that's within the scope of the policy. But that did not occur here. To the best of my knowledge, no. So does the lack of a written contract here impact the analysis of your client's duty to defend or coverage under the policy? No, Your Honor. I don't think it does because we have to look to the allegations of the complaint. And the Ball complaint specifically alleges that the parties had a contract. Getting back to the point of the potential for coverage being contingent on what the third party alleges in their complaint, I don't see any of that concern raised in this case because under the language of the policy, what matters in terms of triggering coverage is the type of damages that are being sought and alleged in that complaint. And so there's no dispute that the underlying complaints are not seeking damages for property damage. Well, if they had in the four corners of the complaints, if they had talked about the fire and alleged that the fire, there's a nexus to that in the contracts, would that have been closer to a duty to defend? I mean, obviously, a duty to defend is broader than a coverage claim. No, I don't think that would have brought it any closer. And the district court sort of ran through that assuming for the sake of argument type analysis. Not in the sense of, oh, if the complaint would have alleged this, but the district court, in its opinion, it specifically said, you know, it started with the four corners analysis and then said, assuming for the sake of argument, we consider the allegations that Northland wants us to consider. Essentially that it was unable to fulfill these contractual obligations because of this fire. Even if we consider all the facts that Northland wants us to consider, there is still no coverage triggered under the policy because that doesn't change the fact that the underlying complaints are not seeking damages for property damage. OK, do you want to say anything about certification? Yes. Thank you, Your Honor. I don't think certification is appropriate in this case for a number of reasons. As was discussed during Northland's counsel's argument, the Idaho Supreme Court has already interpreted contractual liability exclusions, and they've found that, you know, they're not just limited to hold harmless and indemnity agreements. In addition, I don't think certification would materially advance this appeal because the contractual liability exclusion that Northland is wanting the Idaho Supreme Court to consider, that was essentially the court's third basis for granting summary judgment and essentially like a second alternative reason for granting summary judgment. The first reason was four corners. Second reason was even if we consider facts outside the four corners, coverage still hasn't been triggered. And then third, even if we assume coverage had been triggered, this exclusion wouldn't or this exclusion would bar coverage. So it's really... Do you agree, I think, with the appellant that he said if we don't get to the exclusion, there isn't any argument for certification? Absolutely. I definitely agree with that. But even if we did get to the exclusion, you're saying that the cases out there are sufficient to... that there's not... that they tell us what the law is in that area? That's correct, Your Honor. I don't have any additional questions. Do either of my colleagues have questions? You're free to use the balance of your time, but we don't have any additional questions. Thank you, Your Honor. I think we covered most of the points I wanted to get through. One point I wanted to raise, going back to the... So you would like to raise a point that none of the judges are interested in? That's a good point, Your Honor. I will rest my oral argument. Thank you. Thank you. Thank you. Thank you, Your Honor. Just very briefly, I was hoping to just bring up quickly... The duty to defend has been brought up, and I just want to bring up quickly that I think the duty to indemnify was also kind of considered in the district court's opinion. He did consider the facts outside of the complaints in his analysis, so we were hoping that... Whether the facts at hand would support the duty to indemnify if they were all proven true in the underlying proceedings. We've already been through it, but it is our belief that these facts absolutely do. Regardless of whether they show up in the complaint or not, if they were proven at trial that the contract claims resulted from the fire, then the duty to indemnify would still be in play. And finally, just on top of that, just the question of the fraud misrepresentation claim. You know, if we get past our threshold issue of whether coverage is triggered, but the contractual exclusion clause is interpreted in the way CBIC would like it to be, there still should be coverage, and I don't think there's much dispute here of whether, you know, if one claim is covered under the policy, then they have to defend the entire suit. I think everyone agrees on that question, and it is our strong belief that that fraud claim is covered under the policy, you know, regardless of how the contractual exclusion is interpreted. Did I read your opening brief at page 10 to concede that the property exclusion bars coverage for the Balboa suit? You've conceded that? Is that correct? The property exclusion? Yes. Did you concede that another exclusion relating to the damage to property bars coverage for the Balboa suit? I think that's what you said in your opening brief. Not the entire Balboa. There's two claims in there that I don't believe are covered under the exclusion, and that's the same argument that, you know, those two claims, as long as they survive, then the CBIC does have a duty to defend. Okay. And I think that's all I had, if there's no more questions. All right. Thank you both for your argument in this matter. This case will stand submitted. Thank you.
judges: SCHROEDER, HAWKINS, CALLAHAN